# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

LEON J. ABRAMS,
SERGIO B. RAMIREZ,

     Plaintiffs,

v.                                          No. Civ. 13-01113 LH/SCY

DAKOTA R. MOORE,
JERROD PELOT,
MIZEL GARCIA,
ALBUQUERQUE POLICE DEPARTMENT,
CITY OF ALBUQUERQUE,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Dakota R. Moore, Jerrod Pelot, and Mizel Garcia's Motion for Summary Judgment. (ECF No. 11) Defendants Moore, Pelot, and Garcia contend that they are entitled to qualified immunity on all claims raised by Plaintiffs in this case. The Court, having considered the motion, briefs, evidence in the record, relevant law, and otherwise being fully advised, concludes that the motion is well taken and shall be granted. Accordingly, all claims against Defendants Moore, Pelot, and Garcia are dismissed with prejudice. In addition, the Court dismisses Plaintiffs' municipal liability claims with prejudice because Plaintiffs have failed to establish a constitutional violation by the officers. Consequently, this action is dismissed with prejudice.

## I.    INTRODUCTION

On November 28, 2012, Plaintiffs Leon Abrams and Sergio Ramirez were arrested in the parking lot of a Wal-Mart Supercenter in Albuquerque, New Mexico, after they were observed

carrying openly displayed handguns while shopping in the Wal-Mart store by undercover Albuquerque Police Department (APD) officers. Plaintiffs were arrested and charged with violating NMSA 1978, § 30-7-3 (2010), for unlawful carrying of a firearm in an establishment licensed to dispense alcohol beverages. The local district attorney's office later nolle prossed[1] the charge against each Plaintiff without prejudice.

On November 18, 2013, Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 against the APD officers involved in their arrest (Detective Moore, Detective Pelot, and Sergeant Garcia), attorney Paul Martin Cash,[2] the Albuquerque Police Department ("APD"), and the City of Albuquerque ("the City") (collectively, "Defendants"). (ECF No. 1) Plaintiffs claim that Defendants violated and infringed upon their First Amendment, Second Amendment, Fourth Amendment, and Fifth Amendment rights pursuant to § 1983. (*Id.* ¶ 4) Specifically, Plaintiffs claim that their "arrests were made without probable cause" (*Id.* ¶ 5), that they were not given *Miranda* warnings (*Id.* ¶ 11), and that criminal proceedings were initiated against them in state court on the basis of criminal complaints that included falsified evidence, false information, and the omission of material facts. (*Id.* ¶¶ 5, 12, 13) Plaintiffs assert that Defendants' actions violated their Fourth Amendment right to be free from seizure without probable cause, their First Amendment right to free speech, their Second Amendment right to keep and bear arms, and the Fourteenth Amendment for the "continuing depravation[sic] of their property which was seized and . . . never returned." (*Id.* ¶ 15) Plaintiffs also argue that they were subjected to malicious prosecution in violation of the Fourth Amendment. (*Id.* ¶ 16)

---

[1] "A nolle prosequi is a dismissal of criminal charges filed by the prosecutor, usually without prejudice." *State v. Ware*, 1993-NMCA-041, ¶ 8, 115 N.M. 339, 850 P.2d 1042. "[A] nolle prosequi is as final as any other dismissal with or without prejudice." *Id.* ¶ 9.

[2] Mr. Cash is no longer a party in this lawsuit as Plaintiffs voluntarily dismissed their claims against Mr. Cash on February 25, 2014. (ECF No. 10)

## II.    PROCEDURAL HISTORY

On March 5, 2014, Defendants Moore, Pelot, and Garcia—the individual Defendants still remaining in this action—moved for summary judgment as to all claims against them on the basis of qualified immunity. (ECF No. 11) They argue that they are entitled to qualified immunity as to Plaintiffs' § 1983 claims because there was probable cause under the Fourth Amendment to arrest Plaintiffs for a violation of NMSA 1978, § 30-7-3 (2010). (*Id.* at 8-11) Defendants Moore, Pelot, and Garcia also contend that they are entitled to summary judgment as to Plaintiffs' § 1983 claims under the First, Second, Fifth, and Fourteenth Amendments. (*Id.* at 11-16) Plaintiffs filed a response to this motion for summary judgment on April 15, 2014 (ECF No. 27), and a reply was filed on May 1, 2014 (ECF No. 30).

## III.    FACTUAL BACKGROUND[3]

Defendants Dakota Moore and Jerrod Pelot are detectives with the Albuquerque Police Department. (Declaration of Dakota Moore ("Moore Decl."), ECF No. 11-1, ¶ 1; Declaration of Jerrod Pelot ("Pelot Decl."), ECF No. 11-2, ¶ 1) Defendant Mizel Garcia is a sergeant with the Albuquerque Police Department. (Declaration of Mizel Garcia, ("Garcia Decl."), ECF No. 11-3, ¶ 1) All three officers are assigned to APD's Organized Crime Unit. (Moore Decl. ¶ 1, Pelot Decl. ¶ 1, Garcia Decl. ¶ 1)

On November 28, 2012, all three officers were conducting surveillance in a plain clothes capacity in the vicinity of Menaul and Wyoming NE pursuant to an APD tactical plan. (Moore Decl. ¶ 3, Pelot Decl. ¶ 3, Garcia Decl. ¶ 3) The APD tactical plan was undertaken to identify and apprehend individuals involved in a series of recent armed robberies of commercial establishments in the area. (*Id.*; *see also* APD Criminal Investigations Bureau Operational Plan -

---

[3] Except as otherwise noted, the following asserted facts are undisputed.

Serial Robberies, ECF No. 11-1 Sub-Ex. 1) At approximately 6:45 pm on November 28, 2012, Detective Moore observed a white Ford Crown Victoria pull into the parking lot of a Wendy's restaurant located at 2203 Wyoming NE. (Moore Decl. ¶¶ 3-4) Detective Moore initially thought that the vehicle was a police car because it had a spotlight mounted on the A pillar with a set of handcuffs dangling therefrom. (*Id.* ¶ 4) Detective Moore observed the vehicle park in the Wendy's parking lot and then saw an individual exit the vehicle with an openly displayed handgun on his hip. (*Id.* ¶ 5) The individual was wearing slippers, shorts and a red sweatshirt. (*Id.*) Due to the manner of this individual's dress, Detective Moore "concluded that the male was not a police officer but perhaps someone that was going to commit a robbery at the Wendy's."[4] (*Id.*) Detective Moore observed the individual enter Wendy's, stay for several minutes and then leave without purchasing anything. (*Id.* ¶ 6) Upon exiting the restaurant, the individual re-entered his vehicle and proceeded southbound on Wyoming. (*Id.* ¶ 7)

Detective Moore reported this activity via radio transmission to the other officers working the tactical plan, including Detective Pelot and Sergeant Garcia. (*Id.* ¶ 7; Pelot Decl. ¶ 4, Garcia Decl. ¶ 4) Detective Moore then proceeded to follow the vehicle and observed it pull into the parking lot of a Wal-Mart Supercenter located at 2266 Wyoming NE. (Moore Decl. ¶ 7) After the vehicle was parked, two individuals exited the vehicle with openly displayed handguns on their hips and entered the Wal-Mart store. (*Id.* ¶¶ 7-8) These two individuals were later identified as Plaintiffs Leon Abrams and Sergio Ramirez. Sergeant Garcia and Detective Pelot

---

[4] This is the first asserted fact that Plaintiffs dispute in their response to the motion for summary judgment. (Plaintiffs' Resp. Mot. Summ. J., ECF No. 27) Plaintiffs state in the response that they dispute that Detective Moore "believed that an individual openly displaying a firearm merited the conclusion that a person was going to commit a robbery." (*Id.*) However, this fact is not material to the Court's analysis because Plaintiffs' claims in this matter arise from their arrest outside the Wal-Mart Supercenter and not the activity that Detective Moore observed beforehand at Wendy's.

were instructed to follow Plaintiffs into the store. (Moore Decl. ¶ 9, Pelot Decl. ¶ 6, Garcia Decl. ¶ 5) Detective Moore remained outside in the parking lot and maintained contact with Sergeant Garcia and Detective Pelot. (Pelot Decl. ¶ 7) Once inside the store, Detective Pelot and Sergeant Garcia determined that the Wal-Mart Supercenter sold alcoholic beverages.[5] (Pelot Decl. ¶ 7, Garcia Decl. ¶ 6) The officers monitored the activity of Plaintiffs while they were inside the store and observed them make several purchases before exiting the store. (Pelot Decl. ¶ 8, Garcia Decl. ¶ 7)

After exiting the Wal-Mart store, Plaintiffs entered their vehicle. (Moore Decl. ¶ 12, Pelot Decl. ¶¶ 8-10, Garcia Decl. ¶¶ 8-9) At this point, Detective Moore, Detective Pelot, and Sergeant Garcia approached the vehicle and made contact with Plaintiffs. (Moore Decl. ¶ 12, Pelot Decl. ¶ 10, Garcia Decl. ¶ 9) At the officers' request, Plaintiffs exited their vehicle. (Moore Decl. ¶ 12, Pelot Decl. ¶ 10, Garcia Decl. ¶ 9) Plaintiff Abrams was identified as the driver of the vehicle, and Plaintiff Ramirez was identified as the passenger in the vehicle. (Moore Decl. ¶ 13, Pelot Decl. ¶ 11, Garcia Decl. ¶ 10) Plaintiffs' handguns were taken from them and secured for officer safety reasons. (*Id.*) Upon inspection of the handguns at this point, the officers determined that Abrams had a loaded magazine and one round in the chamber of his handgun while Ramirez had an empty handgun with no magazine. (*Id.*)

---

[5] Plaintiffs dispute this asserted fact in their response to the motion for summary judgment. (Plaintiffs' Resp. at 7-8) Plaintiffs state that they "disagree that this fact is undisputed on the basis that the assertion that the Walmart sold alcoholic beverages was previously unknown to Defendants Pelot and Garcia." (*Id.* at 7) The Court finds this quoted language to be less-than-clear, and the Court is unable to ascertain what Plaintiffs are disputing. Regardless, the Court need not give this alleged factual dispute further consideration because Plaintiffs failed to cite to any evidence in the record supporting their contention that this fact is disputed. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988) (stating that the nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment).

As shown on Detective Moore's lapel camera, the officers questioned Plaintiffs about carrying the guns into the Wal-Mart store.  (Moore Decl. ¶ 14, Pelot Decl. ¶ 12, Garcia Decl. ¶ 11; *see also* Transcript of Lapel Recording, ECF No. 11-1 (Sub-Ex. 2)) The officers informed Plaintiffs that they were not permitted under New Mexico law to carry firearms into the store because it sold alcoholic beverages. (Tr. of Lapel Recording; *see also* ECF 11-1 Sub-Ex. 3 and 4) Plaintiffs were subsequently placed under arrest for violating Section 30-7-3. (*Id.*) In relevant part, Section 30-7-3(A) provides:

> Unlawful carrying of a firearm in an establishment licensed to dispense alcoholic beverages consists of carrying a loaded or unloaded firearm on any premises licensed by the regulation and licensing department for the dispensing of alcoholic beverages . . .[6]

On November 29, 2012, Detective Moore filed criminal complaints against each Plaintiff in state court, charging each Plaintiff with one count of violating Section 30-7-3. (ECF No. 11-1 Sub-Ex. 3 and 4) In addition to describing the events that led to Plaintiffs' arrest, Detective Moore stated in the criminal complaints that "Wal-Mart had signs inside posted that read 'No firearms allowed on premises. New Mexico law (Sec. 30-7-3) carrying of a firearm (loaded or unloaded) into these premises is prohibited. Any person carrying a firearm into these premises is guilty of a fourth degree felony.'" (*Id.*) Detective Moore further stated that these signs were "posted conspicuously throughout the store." (*Id.*) According to the criminal complaints, Plaintiffs were transported from the Wal-Mart parking lot to the main city police station for

---

[6] Section 30-7-3(A) enumerates several exceptions where the statute does not apply; however, none of these exceptions is applicable to Plaintiffs.

"completion of paperwork" and later "booked on the charges."[7] (*Id.*) Detective Moore also stated in the criminal complaints that Plaintiffs' "firearms were tagged into evidence." (*Id.*)

On April 2, 2013, the local district attorney's office entered notices of nolle prosequi in the criminal cases, dismissing the charge against each Plaintiff without prejudice. (ECF No. 11-5 and 11-6) On November 18, 2013, Plaintiffs filed this § 1983 lawsuit in this Court.

### a. Alleged Disputed Material Facts regarding the Wal-Mart Supercenter

As noted earlier, the majority of the material facts asserted by Defendants Moore, Pelot, and Garcia in their motion for summary judgment are not disputed by Plaintiffs. The parties do, however, dispute the Wal-Mart Supercenter's status with respect to the sale of alcoholic beverages. In support of their motion for summary judgment, Defendants Moore, Pelot, and Garcia have submitted documentation, issued by the Alcohol and Gaming Division of the New Mexico Regulation and Licensing Department, showing that the Wal-Mart Supercenter had an active liquor "dispenser license" on the date that Plaintiffs were observed carrying openly displayed firearms into the Wal-Mart store. (ECF No. 11-4) In addition, Detective Pelot and Sergeant Garcia stated that they determined that the Wal-Mart store was selling alcoholic beverages after they followed Plaintiffs into the store. (Pelot Decl. ¶ 7, Garcia Decl. ¶ 6)

In their response, Plaintiffs allege the following with respect to the Wal-Mart:

3. No Walmart or other retail grocery store in New Mexico participates in the sale of alcohol for consumption on the licensed premise.

4. Walmart stores in New Mexico commonly sell both firearms and alcohol on the same premise.

5. The particular Walmart at issue in the case has simultaneously and was at the time of the event selling both firearms and alcohol on the licensed premise.

---

[7] Although Plaintiffs alleged in their complaint that they were incarcerated for two days (Ramirez) and eight days (Abrams) following their arrests, the summary judgment record contains no evidence confirming the length or nature of Plaintiffs' incarceration.

(Pls.' Resp. at 6-7) Plaintiffs also allege that:

> 2. The Defendant officers presented false evidence in the form of a picture [of signage at the Wal-Mart] taken on a cell phone to Plaintiffs at the time of the event and included the same in their reports [the criminal complaints].

(Pls.' Resp. at 8) Plaintiffs have failed to cite to or provide evidence in the summary judgment record that substantiates the foregoing factual assertions. Because this is summary judgment, the proceeding is beyond the pleading phase of the litigation, and "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). The Court in its analysis can only rely on facts that are supported by admissible evidence in the summary judgment record. *See* Fed. R. Civ. P. 56(c)(1) (describing types of admissible evidence); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining that a non-moving party, when faced with a summary judgment motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'") (quoting former Fed. R. Civ. P. 56(e)). The Court will consequently disregard Plaintiffs' unsupported factual allegations concerning the Wal-Mart Supercenter's sale of alcoholic beverages at the time of their arrest and any alleged 'false' evidence that the officers may have used.

   In addition, Plaintiffs have submitted fourteen photographs purportedly of signage on the entry doors to the Wal-Mart Supercenter.[8] (Pls.' Resp. Ex. A1-A14) Plaintiffs rely on these photographs to attempt to raise a material disputed fact that "[t]here were not any signs prohibiting the carrying of firearms in this Walmart posted conspicuously or otherwise at the time of the event." (Pls.' Resp. at 8) Upon examination of the photographs, the Court notes that

---

[8] The Court notes that the photographs are the *only* evidence submitted by Plaintiffs in their response to the motion for summary judgment.

the photographs are not dated and do not otherwise include any information identifying the particular Wal-Mart store at which the photographs were taken. Furthermore, the photographs are not accompanied by an affidavit or declaration providing this necessary information. The Court concludes that the photographs are not probative on the issue of signage at the Wal-Mart Supercenter.

To summarize, the only admissible evidence in the record regarding the sale of alcoholic beverages at the Wal-Mart Supercenter is the liquor license documentation provided by Defendants, Detective Moore's sworn statement in the criminal complaints that the Wal-Mart store had signage prohibiting the carrying of firearms due to its status as a licensed liquor establishment, and Detective Pelot and Sergeant Garcia's statements in their declarations that they determined that the Wal-Mart store sold alcoholic beverages after they followed Plaintiffs in to the store.

## IV.     STANDARD OF REVIEW

### Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036

(10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

**Section 1983 and Qualified Immunity**

Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013). "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Id.* at 460. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When an individual defendant in a § 1983 action moves for summary judgment on the basis of qualified immunity, the burden shifts to the plaintiff to meet a two-part test. Specifically, the plaintiff is required to show "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460; *see also Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (stating that the court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."). The Court may address either prong of the qualified immunity analysis first depending on "the circumstances in the particular case at hand." *See Pearson*, 555 U.S. at 236. "If a plaintiff successfully carries his

two-part burden, the defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Estate of Booker*, 745 F.3d at 412. A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "At the summary judgment stage in a qualified immunity case, the court may not weigh evidence" and is still required to "resolve genuine disputes of material fact in favor of the nonmoving party." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).

## V.    ANALYSIS

### 1.  Plaintiffs' Fourth Amendment Claims for Unlawful Arrest and Malicious Prosecution

Defendants Moore, Pelot, and Garcia initially argue that they are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims for unlawful arrest and malicious prosecution because they had probable cause to arrest Plaintiffs for violating Section 30-7-3(A). (Defs.' Mot. Summ. J., ECF No. 11 at 8-11)

#### a.  *Unlawful Arrest Claim*

A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). With respect to the first prong of the qualified immunity analysis in the context of an unlawful or false arrest claim, "an arrestee's constitutional rights [are] violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300

11

(10th Cir. 2012). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotation marks omitted). "The probable cause inquiry is an objective one." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012). "When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Id.* at 1194.

As to the second prong of the qualified immunity analysis on an unlawful arrest claim—whether the law was clearly established at the time of the alleged violation—a plaintiff is required to show that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman*, 697 F.3d at 1300. The Court "implement[s] this standard by asking whether there was arguable probable cause for an arrest—if there was, a defendant is entitled to qualified immunity." *Id.* "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher*, 759 F.3d at 1141 (internal quotation marks omitted).

In this case, Defendants Moore, Pelot, and Garcia argue that they are each entitled to qualified immunity on Plaintiffs' false arrest claim because they had probable cause to arrest Plaintiffs for violating Section 30-7-3(A). (Mot. Summ. J. at 8-11) This New Mexico statute provides in pertinent part that:

> Unlawful carrying of a firearm in an establishment licensed to dispense alcoholic beverages consists of carrying a loaded or unloaded firearm on any premises

licensed by the regulation and licensing department for the dispensing of alcoholic beverages . . .[9]

Under the Court's reading of this statutory provision—which is consistent with New Mexico case law and the state's uniform jury instruction for the offense—there are two elements for the offense: (1) that the establishment at issue "is licensed to dispense alcoholic beverages;" and (2) that the defendant "was carrying a loaded or unloaded firearm" while in the establishment. *See* UJI 14-702 NMRA; *see also State v. Torres*, 2003-NMCA-101, ¶¶ 10-11, 134 N.M. 194, 75 P.3d 410 (stating that Section 30-7-3(A) imposes "strict liability upon those who, with a general criminal intent, purposely carry a firearm into a liquor establishment" and further, that to convict under Section 30-7-3, the jury is only required to "find that the establishment is licensed to dispense alcoholic beverages and that the defendant was carrying a firearm in the establishment.").

Turning to the facts of this case, Plaintiffs do not dispute that they purposely carried openly displayed firearms into the Wal-Mart store. Detective Pelot and Sergeant Garcia both stated in their declarations that they determined that this Wal-Mart store sold alcoholic beverages after they followed Plaintiffs into the store. Likewise, Detective Moore stated in the criminal complaints that there was signage posted conspicuously inside the Wal-Mart store prohibiting the carrying of firearms based on Section 30-7-3. In addition, the officers have provided uncontradicted evidence establishing that the Wal-Mart store at issue had an active New Mexico vendor license to dispense alcoholic beverages at the time of Plaintiffs' arrest. Based on these undisputed facts in the summary judgment record, the Court concludes that probable cause existed to arrest Plaintiffs for a violation of Section 30-7-3(A).

---

[9] It is undisputed that the effective date of this statutory provision preceded the date of Plaintiffs' arrest.

The Court is not persuaded by Plaintiffs' factual and legal arguments to the contrary. In response to the motion for summary judgment, Plaintiffs contend that probable cause could not have existed based on the following alleged facts: (1) there was no signage at the Wal-Mart store prohibiting the carrying of firearms due to the store's sale of alcoholic beverages; (2) the Wal-Mart store sold both firearms and alcoholic beverages on the date that Plaintiffs were arrested; (3) the Wal-Mart store did not provide for on-site consumption of alcohol; and (4) the officers confronted Plaintiffs with fabricated evidence, namely a cell phone picture of signage, prior to their arrests. (Pls.' Resp. at 1-2, 7-9) However, as the Court has already stated, these facts are solely allegations by Plaintiffs' counsel that are without any factual support in the summary judgment record. *See supra* pgs. 7-8. Specifically, there is no evidentiary basis for Plaintiffs' contention that the store lacked signage prohibiting the carrying of firearms, that the officers fabricated evidence, or that the Wal-Mart store at issue sold both firearms and alcoholic beverages. Moreover, Plaintiffs' assertions regarding signage, or lack thereof, at the Wal-Mart store are not relevant because the Court is not persuaded that Section 30-7-3(A) has a signage requirement. *See State v. Montoya*, 1977-NMCA-134, ¶¶ 5-6, 14, 91 N.M. 262, 572 P.2d 1270 (determining that Section 30-7-3 does not require that notice be posted by the licensed liquor establishment of its status and that a defendant is not required to have notice that he/she entered a regulated area before a conviction can be sustained). The plain language of the statutory provision requires only that the defendant carried a firearm in to an establishment licensed to dispense alcoholic beverages, and Defendants have proven these two elements of the statute.

Plaintiffs also focus on the term "dispense" in Section 30-7-3(A) to argue that probable cause can only exist where the liquor establishment dispenses alcohol for "both consumption on the premise and package sales for off premise consumption." (Pls.' Resp. at 8-9) In support of

14

this argument, Plaintiffs rely on the definition of "dispenser" that is set forth in the New Mexico Liquor Control Act: "a person licensed under the provisions of the Liquor Control Act selling, offering for sale or having in the person's possession with the intent to sell *alcoholic beverages both by the drink for consumption on the licensed premises and in unbroken packages for consumption and not for resale off the licensed premises*." NMSA 1978, § 60-3A-3(H) (2012) (emphasis added). (Pls.' Resp. at 9) Plaintiffs rely on the italicized language above to argue that the Wal-Mart store was required to offer alcohol for consumption on the premises in order for it to be considered "an establishment licensed to dispense alcoholic beverages" under Section 30-7-3(A). The Court rejects this argument because New Mexico case law interpreting Section 30-7-3(A) has held that the provision is not limited to dispenser's licenses as Plaintiffs contend. *See Montoya*, 1977-NMCA-134, ¶ 13 (determining that 30-7-3(A) "applies to 'any premises licensed' for dispensing" and "is not limited to a 'dispenser's license'"). Moreover, even if the Court were to accept Plaintiffs' interpretation of the term "dispense," Plaintiffs have offered no admissible evidence regarding the type of sales of alcoholic beverages that the Wal-Mart store was engaged in at the time of Plaintiffs' arrest and whether consumption on-premises was permitted. *See Montoya*, 1977-NMCA-134, ¶ 13 (stating that Section 30-7-3 applies to premises licensed to sell alcohol "by the drink or in packages"); *Cf. State v. Lake*, 1996-NMCA-055, 121 N.M. 794, 918 P.2d 380 (reversing dismissal of Section 30-7-3 charge where the defendant carried handgun into a convenience store licensed to sell alcoholic beverages at a time of day when the convenience store was actually prohibited from selling alcohol by statute); *Torres*, 2003-NMCA-101 (affirming conviction under Section 30-7-3 where the defendant carried firearm into a restaurant that was a licensed liquor establishment after rejecting the defendant's

mistake-of-fact defense that he did not know the restaurant was a liquor establishment and that he saw no signage indicating that the restaurant served liquor).

In sum, because Detectives Moore and Pelot, and Sergeant Garcia observed Plaintiffs enter Wal-Mart, a licensed liquor establishment, with openly displayed firearms, the Court concludes that probable cause existed to arrest Plaintiffs for a violation of Section 30-7-3(A). The officers' interpretation of Section 30-7-3(A) was one that a reasonable officer would have held at the time of Plaintiffs' arrest. *See Kaufman*, 697 F.3d at 1300-01. Therefore, Detective Moore, Detective Pelot, and Sergeant Garcia are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim for unlawful arrest.

### b. *Malicious Prosecution Claim*

A § 1983 malicious prosecution claim brought under the Fourth Amendment requires showing that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Identical to the argument raised on Plaintiffs' unlawful arrest claim, Defendants Moore, Pelot, and Garcia contend that they are entitled to qualified immunity on Plaintiffs' § 1983 malicious prosecution claim because they had probable cause to arrest Plaintiffs for violating Section 30-7-3(A). (Mot. Summ. J. at 11) Although the Court has determined that probable cause existed to arrest Plaintiffs, the existence of probable cause at the time of the arrest is not a complete defense to a malicious prosecution claim. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1295-96 (10th Cir. 2004) (affirming district court's determination that even when probable cause is present at time of arrest, evidence could later surface to eliminate this probable cause—such as

the officer "knowingly or recklessly omit[ted] from the affidavit information which, if included, would have vitiated probable cause"). Thus, the Court cannot rely solely on this argument.[10]

The Court, however, finds the favorable termination element of § 1983 malicious prosecution claims dispositive in determining whether Defendants Moore, Pelot, and Garcia are entitled to qualified immunity on this claim. The undisputed evidence in the summary judgment record shows that the charge against each Plaintiff was dismissed by the filing of notices of nolle prosequi. (ECF No. 11-5 and 11-6) Both notices stated that the charge under Section 30-7-3 was dismissed without prejudice subject to re-filing at a later date. (*Id.*) The Tenth Circuit has instructed that "[t]o decide whether a *nolle prosequi* constitutes a favorable termination, we look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803. "The plaintiff has the burden of proving a favorable termination." *Id.* (internal quotation marks omitted). "[A] bare nolle prosse without more is not indicative of innocence" and the "dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Id.*

Here, the notices of nolle prosequi entered in Plaintiffs' criminal cases contain no information explaining the district attorney's reason for the dismissal of the charges. Thus, the notices, standing alone, do not establish that the criminal proceedings resulted in a favorable termination because the notices do not indicate Plaintiffs' innocence. Plaintiffs have also not

---

[10] Plaintiffs alleged in their complaint that Defendants falsified and omitted facts in the criminal complaints, and that a state metropolitan judge relied on these falsified complaints in determining that probable cause existed to institute criminal proceedings. (Pls.' Compl. at 7) The summary judgment record, however, contains no information regarding the metropolitan court's judicial probable cause determination or the legal process that occurred between the date that Detective Moore initially filed the criminal complaints (ECF No. 11-1 Sub-Ex. 4) and the date that the notices of nolle prosequi (ECF No. 11-5 and 11-6) were entered. Consequently, the Court was unable to consider this assertion by Plaintiffs.

provided other evidence explaining the reason(s) for the dismissal of the state criminal proceedings. Consequently, the Court determines that Defendants Moore, Pelot, and Garcia are entitled to qualified immunity on Plaintiffs' malicious prosecution claim.

## 2. Fifth Amendment Claim

Defendants Moore, Pelot, and Garcia next contend that they are entitled to qualified immunity on Plaintiffs' Fifth Amendment claim. (Mot. Summ. J. at 14-15) Plaintiffs summarily asserted a § 1983 Fifth Amendment claim based on an alleged *Miranda* violation in their complaint.[11] Defendants argue that a *Miranda* violation, even if one occurred in this case, is not actionable under § 1983, thereby making summary judgment appropriate on Plaintiffs' Fifth Amendment claim. (Mot. Summ. J. at 14) Plaintiffs do not substantively refute this argument in their response to the summary judgment motion; instead, they summarily assert that their "1st, 2nd, 5th, and 14th Amendment claims" remain viable. (Pls.' Resp. at 10)

The Court's review of the summary judgment record reveals no evidence, one way or another, showing that a *Miranda* violation occurred during the officers' encounter with Plaintiffs in the Wal-Mart parking lot. However, even if the Court were to accept as true Plaintiffs' allegation that Defendants Moore, Pelot, and Garcia questioned them without first advising them of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Plaintiffs' Fifth Amendment claim is nevertheless not actionable under § 1983 for two reasons.

---

[11] The Court must note that Plaintiffs failed to clearly articulate the nature and scope of their Fifth Amendment claim in their complaint. In the introduction portion of their complaint, Plaintiffs asserted that they were bringing a civil rights action based, in part, on a violation of their "Fifth Amendment rights." Later in this section, Plaintiffs alleged that they were "never read their *Miranda* rights." (Pls.' Compl. at 1-2) This is the extent of Plaintiffs' assertion of a Fifth Amendment claim in their complaint. The Court therefore construes Plaintiffs' claim to be a § 1983 Fifth Amendment claim based on a *Miranda* violation.

First, the Supreme Court has held that an officer's alleged failure to warn an individual of his/her *Miranda* rights does not violate the individual's Fifth Amendment constitutional rights and cannot form the basis of a § 1983 claim for liability. *See Chavez v. Martinez*, 538 U.S. 760, 772-73 (2003) (holding that a police officer's "failure to read *Miranda* warnings to [the plaintiff] did not violate [the plaintiff's] constitutional rights and cannot be grounds for a § 1983 action"). Second, to the extent that Plaintiffs assert a violation of their Fifth Amendment constitutional right against self-incrimination, such a claim also fails because there is no evidence that Plaintiffs' alleged compelled statements were used against them in their criminal cases. The Supreme Court has held that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Id.* at 770. Here, the charges against each Plaintiff were dismissed prior to trial, and there is no indication that any statements made by Plaintiffs were ever used against them in the initial state criminal proceedings or in any subsequent criminal prosecutions. Accordingly, Defendants Moore, Pelot, and Garcia are entitled to qualified immunity as to Plaintiffs' Fifth Amendment claim. *See id.* at 766, 772-73 (holding that the defendant officer was entitled to qualified immunity on the plaintiff's Fifth Amendment claim where the plaintiff "was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case").

### 3. First Amendment and Second Amendment Claims

Defendants Moore, Pelot, and Garcia also contend that they are entitled to qualified immunity on Plaintiffs' First and Second Amendment claims. (Mot. Summ. J at 11-14) Plaintiffs failed to substantively respond to Defendants' arguments on these claims in their opposition to summary judgment. (*See* Pls.' Resp. at 10) As the Court explains below, summary judgment is appropriate on these claims because Plaintiffs have failed to meet their burden of pointing to

facts showing that the officers' actions violated their First and Second Amendment constitutional rights. *See Estate of Booker*, 745 F.3d at 411 (stating that the court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct.").

Turning first to Plaintiffs' First Amendment claim under § 1983, the Court construes this claim as a retaliatory arrest claim—i.e., that the officers allegedly arrested Plaintiffs in retaliation for exercising their First Amendment rights "to openly carry firearms as a political statement of their support for the [Second] Amendment right to bear arms." (Pls.' Compl. at 2) "To make a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Stonecipher*, 759 F.3d at 1147. Here, Plaintiffs have not attempted to satisfy their burden to establish any of these three elements. Significantly, Plaintiffs have failed to show that they were engaged in "constitutionally protected activity" prior to their arrest.[12] They have also failed to point to facts showing that the officers' actions were "substantially motivated" as a response to any alleged protected speech. *See Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009) (stating that "[a] plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient

---

[12] While Plaintiffs appeared to allege in their complaint that their act of carrying openly displayed firearms in to the Wal-Mart store constituted protected "speech" under the First Amendment, Plaintiffs did not make this assertion in their opposition to summary judgment. It was Plaintiffs' burden to show that their expressive conduct was speech that qualifies for protection under the First Amendment.

to create a genuine issue of fact" when evaluating whether summary judgment is appropriate on a First Amendment retaliation claim); *See also Stonecipher*, 759 F.3d at 1148 (holding that individual officers were entitled to qualified immunity on the plaintiffs' First Amendment claim where there were no facts "demonstrat[ing] the defendants acted on the basis of a culpable subjective state of mind"). Consequently, Defendants Moore, Pelot, and Garcia are entitled to qualified immunity on Plaintiffs' First Amendment claim.

The Court also concludes that the officers are entitled to qualified immunity on Plaintiffs' Second Amendment claim by virtue of Plaintiffs' failure to mention, much less explain with supporting authority in their response, how their arrests under Section 30-7-3(A) violated the Second Amendment. The Second Amendment does not confer an absolute and unfettered right on the plaintiffs to bear arms. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) (reaffirming that the "right secured by the Second Amendment is not unlimited"). Because Plaintiffs have failed to meet their burden of establishing that the officers' actions violated their Second Amendment rights, Defendants Moore, Pelot, and Garcia are entitled to qualified immunity on this claim.

### 4. Fourteenth Amendment Claim

Defendants Moore, Pelot, and Garcia assert that they are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claim. (Mot. Summ. J. at 15-17) Plaintiffs also failed to respond to this argument in their opposition to summary judgment.

In relevant part, the Fourteenth Amendment precludes states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "To state a violation of this amendment, Plaintiffs must identify a liberty or property interest of which they were deprived." *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d

1183, 1192 (10th Cir. 2008). In this case, Plaintiffs have failed to meet their burden of identifying a liberty or property interest that has been infringed upon. Although Plaintiffs asserted in their complaint that they have been subjected to the "continuing deprivation of their property" in violation of the Fourteenth Amendment, their complaint failed to explicitly identify the property interest that they claim is the subject of this claim. (Pls.' Compl. at 2, 7) Plaintiffs alleged elsewhere in their complaint that their firearms were taken by the officers in the Wal-Mart parking lot and that their personal belongings were taken upon their booking in to the Metropolitan Detention Center (MDC). (*Id.* at 5) Even if the Court were to draw an inference that this is the property that is the subject of Plaintiffs' § 1983 Fourteenth Amendment claim, Plaintiffs have not provided any argument on summary judgment regarding the nature of their Fourteenth Amendment claim and, more importantly, they have not submitted evidence regarding the status of the property at the time of this lawsuit. Thus, the Court can only speculate as to whether the firearms and other personal property remain in police custody.

The Court notes that Defendants Moore, Pelot, and Garcia take the position in their summary judgment motion that Plaintiffs are contending that their "Fourteenth Amendment rights have been violated because their handguns have not been returned to them even though the criminal charges have been dismissed." (Mot. Summ. J. at 15) However, while there is evidence showing that the firearms were seized at the time of Plaintiffs' arrest,[13] there is no evidence establishing the continued retention of the handguns. There is also no evidence in the summary judgment record regarding any actions taken by Defendants related to the firearms after the charges were nolle prossed or any subsequent efforts by Plaintiffs to retrieve their property. In

---

[13] Defendants Moore, Pelot, and Garcia all stated in their declarations that the firearms were taken for officer safety reasons during their encounter with Plaintiffs in the Wal-Mart parking lot. (Moore Decl. ¶ 13, Pelot Decl. ¶ 11, Garcia Decl. ¶ 10)

addition, Plaintiffs have not presented any evidence that Defendants Moore, Pelot, and Garcia had the authority to return the firearms after they were seized and the criminal proceedings were initiated. *See Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 93 (10th Cir. 2008) (unpublished) (affirming grant of summary judgment on § 1983 Fourteenth Amendment claim where the plaintiffs failed to present evidence that the individual officers responsible for the initial seizure of firearms from the plaintiffs' home had authority to return their property once it was seized). Given the lack of necessary factual development, the Court is unable to ascertain whether there were any potential procedural or substantive due process violations. Consequently, Plaintiffs have failed to meet their burden of establishing a constitutional violation.

Due to Plaintiffs' failure to identify the property interest that has been infringed upon and their failure to provide the necessary factual development on this claim, the Court concludes that summary judgment is appropriate because Plaintiffs have not shown that genuine issues remain for trial. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). Defendants Moore, Pelot, and Garcia are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claim.

## 5. Municipal Liability[14]

---

[14] It is not clear from Plaintiffs' complaint if they have also asserted a supervisory liability claim against the APD. To the extent that Plaintiffs may have raised such a claim, the Court determines that this claim also must be dismissed. "[A] plaintiff must satisfy three elements to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *See Estate of Booker*, 745 F.3d at 435. Plaintiffs must show "an affirmative link between the supervisor and the constitutional violation." *Id.* Here, not only have Plaintiffs failed to establish a constitutional violation, but they have also failed to establish a link between the APD's supervisory role and the officers' actions. *See id.* (stating that the causation element of a supervisory liability claim requires that the

Plaintiffs have also asserted municipal liability claims against Defendants the City of Albuquerque ("the City") and the Albuquerque Police Department ("APD"). In their response to Defendant Moore, Pelot, and Garcia's motion for summary judgment, Plaintiffs *sua sponte* argue that their municipal liability claims should remain in this lawsuit even if the claims against the individual officers are dismissed on grounds of qualified immunity. (Pls.' Resp. at 10-11) Plaintiffs allege that the City and APD had a custom and policy of "the manufacturing of evidence and the unnecessary confrontation with law abiding gun owners." (*Id.* at 11) Plaintiffs do not point to any evidence in the record showing such a custom and policy; instead, they maintain that discovery is still necessary. (*Id.*) In reply to this argument, Defendants Moore, Pelot, and Garcia contend that all claims against the City and APD must be dismissed because Plaintiffs' constitutional rights were not violated by the officers. (Defs.' Reply, ECF No. 30 at 9)

The Court agrees with Defendants that the municipal liability claims must be dismissed in this case. A plaintiff suing a municipality under § 1983 for the acts of its employees must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Here, the Court has already found that no constitutional right was violated by Defendants Moore, Pelot, or Garcia. Thus, the City cannot be held liable under § 1983,[15] and all claims brought against the City and APD are dismissed with

---

plaintiff show that "the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his or] her constitutional rights." (internal quotation marks omitted)).

[15] Plaintiffs also appear to bring a Fourteenth Amendment claim under § 1983 against the City, and more specifically, the City's "Legal Department" for allegedly making "threats of retaliation

prejudice. *See Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1155-56 (10th Cir. 2001) ("[E]ven if it could be said that [the City's] policies, training, and supervision were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation.").

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Moore, Pelot, and Garcia's Motion for Summary Judgment on grounds of qualified immunity is **GRANTED** as follows:

1) Defendants Moore, Pelot, and Garcia are entitled to qualified immunity as to all claims raised against them. Accordingly, Plaintiffs' § 1983 claims against Defendants Moore, Pelot, and Garcia are dismissed with prejudice.

2) All § 1983 claims against Defendants APD and the City are dismissed with prejudice.

Because Plaintiffs have no other claims against Defendants, **this lawsuit is dismissed with prejudice**. **IT IS SO ORDERED.**

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

against Plaintiffs, in which the City would seek a monetary award against Plaintiffs for filing a lawful cause of action against the City." (Pls.' Compl. at 7) However, Plaintiffs voluntarily dismissed their claims against the city attorney named individually in this lawsuit. *See supra* note 2. The Court views this dismissal as signifying that Plaintiffs no longer contend that any municipal employees from the legal department violated their Fourteenth Amendment constitutional rights. Accordingly, there can be no basis for municipal liability. *See Shue v. Laramie Cnty. Det. Ctr.*, 2014 WL 6807739, at *2 (10th Cir. 2014) (stating that "a necessary condition for holding a municipality liable under § 1983 is the establishment of a constitutional violation by its officers or agents."). Defendants are entitled to summary judgment on this claim.